In re Lorant Arzen
**GYULAFIA, Debtor.**

In re Donald Leroy **GIBSON, Jr.,**
**Larinda Ann Gibson, Debtors.**

In re Ozell (NMN) **BROWN, Omie**
**(NMN) Brown, Debtors.**

In re Otis Robert **FRANKLIN, Wanda**
**Jeanette Franklin, Debtors.**

In re Linda S. **BROWN, Debtor.**

**Bankruptcy Nos. 80–21157, 81–20182,**
**82–21107, 83–20927 and 84–20094.**

United States Bankruptcy Court,
D. Kansas.

Oct. 10, 1986.

**914**

David R. House, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, D.C., Robert A. Olsen, Asst. U.S. Atty., Kansas City, Kan., for I.R.S.

Lloyd C. Swartz, Topeka, Kan., Trustee.

Mary V. Hughes, Kansas City, Mo., for debtor Gyulafia.

Robert DeCoursey, Kansas City, Kan., for debtor Gyulafia.

Thomas M. Mullinix, Kansas City, Kan., for debtors Gibson.

Annette M. Jackson, Kansas City, Kan., for debtors Brown.

Robert B. Yohe, Overland Park, Kan., for debtors Franklin.

Steven J. Wells, Overland Park, Kan., for debtor Linda Brown.

## MEMORANDUM OPINION AND ORDER

BENJAMIN E. FRANKLIN, Bankruptcy Judge.

This matter is a consolidation of five cases in order to determine the priority of unpaid federal income taxes incurred by the debtors after the filing of the Chapter 13 petitions. The United States Internal Revenue Service designated the taxes as administrative expenses and requested payment pursuant to 11 U.S.C. § 503. The trustee objected to the request and characterized the taxes as post-petition tax claims under 11 U.S.C. § 1305. David R. House appeared on behalf of the Internal Revenue Service. Lloyd C. Swartz appeared on behalf of the trustee.

## FINDINGS OF FACT

1. Lorant Arzen Gyulafia filed his Chapter 13 bankruptcy petition on November 13, 1980. The plan was confirmed on November 2, 1981. The United States requested payment of administrative expenses for income tax liabilities incurred in 1981 and 1982.

2. Donald Leroy Gibson, Jr. filed his Chapter 13 bankruptcy petition on February 27, 1981. The plan was confirmed on May 7, 1981. The United States requested payment of administrative expenses for income tax liabilities incurred in 1983.

3. Ozell and Omie Brown filed their Chapter 13 bankruptcy petition on November 10, 1982. The plan was confirmed on March 31, 1983. The United States requested payment of administrative expenses for federal income tax liabilities incurred in 1983.

4. Otis and Wanda Franklin filed their Chapter 13 bankruptcy petition on October 24, 1983. The plan was confirmed on February 7, 1984. The United States requested payment of administrative expenses for federal income tax liabilities incurred in 1983.

5. Linda S. Brown filed her Chapter 13 bankruptcy petition on January 30, 1984. The plan was confirmed on May 1, 1984. The United States requested payments of administrative expenses for federal income tax liabilities incurred in 1983.

6. On July 1, 1985, the Court issued an Order to Consolidate the above five cases.

The Court determined that all the issues in the five cases had been resolved down to one remaining legal question.

## ISSUE OF LAW

WHETHER THE POST–PETITION INCOME TAX LIABILITIES OF THE CHAPTER 13 DEBTORS ARE ADMINISTRATIVE EXPENSES UNDER 11 U.S.C. § 503(b)(1), OR WHETHER THE TAXES ARE POST–PETITION TAX CLAIMS UNDER 11 U.S.C. § 1305(a).

## CONCLUSIONS OF LAW

The Internal Revenue Service (IRS) contends that the post-petition tax liabilities should acquire administrative expense status pursuant to 11 U.S.C. § 503(b) of the Code which states:

(b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—

(1)(A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case:

(B) any tax—

(i) incurred by the estate, except a tax of a kind specified in section 507(a)(6) of this title; or

(ii) attributable to an excessive allowance of a tentative carryback adjustment that the estate received, whether the taxable year to which such adjustment relates ended before or after the commencement of the case;

The government argues that post-petition tax liability is an actual, necessary cost and expense of preserving the estate. The basis of this argument is that since federal income taxes are a necessary cost for the production of regular income, and regular income is a prerequisite to Chapter 13 relief, federal income taxes are an actual, necessary cost of preserving the estate.

This Court rejects the IRS's contention and finds that this type of claim is controlled by a specific statute in Chapter 13, section 1305 of Title 11, United States Code, which states:

(a) A proof of claim may be filed by any entity that holds a claim against the debtor—

(1) for taxes that become payable to a governmental unit while the case is pending; or

(2) that is a consumer debt, that arises after the date of the order for relief under this chapter, and that is for property or services necessary for the debtor's performance under the plan.

(b) Except as provided in subsection (c) of this section, a claim filed under subsection (a) of this section shall be allowed or disallowed under section 502 of this title, but shall be determined as of the date such claim arises, and shall be allowed under section 502(a), 502(b), or 502(c) of this title, or disallowed under section 502(d) or 502(e) of this title, the same as if such claim had arisen before the date of the filing of the petition.

(c) A claim filed under subsection (a)(2) of this section shall be disallowed if the holder of such claim knew or should have known that prior approval by the trustee of the debtor's incurring the obligation was practicable and was not obtained.

The IRS, as a holder of post-petition tax claims, could have elected to seek distribution under the Chapter 13 plans by filing proofs of claims under section 1305(a)(1). *See* 5 Collier on Bankruptcy ¶ 1305.01[2][B] (15th ed. 1986), pg. 1305–7.

The IRS has attempted to avoid the application of section 1305 by labeling it voluntary in nature. The government argues that they have a choice between filing a claim under section 1305 or filing a claim for administrative expenses under section 503. This Court agrees that section 1305 is voluntary. However, the choice is not between section 1305 and section 503. Rather, the government has a choice between voluntary participation in the wage-earner plan under section 1305 or going directly against the debtor pursuant to applicable

nonbankruptcy law or orders of the court dispensing relief from the automatic stay pursuant to section 362. *See* 5 Collier on Bankruptcy ¶ 1305.01[2][B] (15th ed. 1986).

■ The Court finds that section 503 administrative expense status is not available to post-petition tax claims in a Chapter 13 case; and whether or not the taxes were incurred before or after confirmation does not affect this conclusion.

■ In three of the five cases, the debtors incurred the tax liability after the confirmation of the plan: the Lorant Gyulafia case, the Donald Gibson, Jr. case, and the Ozell and Omie Brown case. Section 503(b)(1)(B) does provide that taxes "incurred by the estate" can be administrative expenses. However, confirmation of the Chapter 13 plan vests all the property of the estate in the debtor and releases the estate from all claims and interests of the creditors. *See* 11 U.S.C. § 1327(b) & (c). As such, post-confirmation taxes are incurred by the debtor and are not administrative expenses under section 503(b)(1).

Other courts in this district have recognized this principle. In *In re Westholt Manufacturing, Inc.*, 20 B.R. 368, 6 C.B. C.2d 1068 (Bankr.D.Kan.1982), the Honorable Robert B. Morton, United States Bankruptcy Judge, District of Kansas, considered the same question in a Chapter 11 reorganization case. The judge stated:

[2] Pursuant to the above discussion, the court concludes that taxes incurred by a debtor in possession subsequent to confirmation of the Chapter 11 plan are not taxes "incurred by the estate" under section 503 of the Code. Other provisions of the Code lend support to this view. The automatic stay of section 362 remains in effect while a Chapter 11 plan is pending confirmation. Upon the plan's confirmation, and simultaneous discharge of the debtor under section 1141(d), however, the automatic stay terminates pursuant to section 362(c) and creditors may proceed to collect post-confirmation debts from the debtor. At confirmation, all the property of the estate is vested in the debtor, thereby terminat-

ing the estate's existence, although the court has continued jurisdiction under section 1142 to oversee the plan's execution. Thus, taxes incurred by the debtor in possession after confirmation are to be treated as pre-petition claims in a subsequent conversion of the case.

*Id.* at 1072.

In *United States v. Redmond,* 36 B.R. 932, 10 C.B.C.2d 1428 (D.Kan.1984), the Honorable Sam A. Crow, United States District Court Judge, District of Kansas, affirmed the bankruptcy court's reasoning, and stated:

Unless a reorganization plan provides otherwise, confirmation vests all of the property of the estate in the debtor and releases it from all claims and interests of creditors. See 11 U.S.C. § 1141(b) & (c). The IRS, as well as other post-confirmation creditors of the reorganized debtor, are no longer restrained by the automatic stay in bankruptcy which terminates when the property of the estate vests in the reorganized debtor upon confirmation. See 11 U.S.C. § 362(c). Since the bankruptcy estate is no longer being administered by the trustee or the debtor in possession, taxes which accrue post-confirmation are not incurred as actual, necessary costs and expenses of preserving the estate pursuant to section 503(b)(1)(B). Upon conversion of a Chapter 11 reorganization to a Chapter 7 liquidation, unpaid employment and unemployment taxes are treated the same as prepetition claims. See 11 U.S.C. § 348(d). Accordingly, they are entitled to a sixth priority under section 507(a)(6).

The government contends that the "estate" continues to exist from the commencement of the case, throughout the administering of the estate and until the closing of the case. Taxes incurred by the reorganized debtor, it is argued, should be entitled to treatment and administrative expenses. Under the facts of this case, the government's argument is not persuasive to the court. It is clear that upon confirmation of a plan of reorganization, property of the bankruptcy

estate vests in the reorganized debtor, a new entity, and administration of the estate ceases. As such, the tax liability of the reorganized debtor was not incurred in administering the bankruptcy estate. As a post-confirmation creditor, the IRS is not without remedies in dealing with the reorganized debtor.

*Id.* at 1430 (footnotes omitted).

Although the present cases are under Chapter 13 rather than under Chapter 11, this fact does not distinguish *Westholt* and *Redmond.* Sections 1327(b) & (c) are identical to the sections relied upon in the decisions, sections 1141(b) & (c). Under § 1327(b) & (c), confirmation vests all of the property in the debtor and releases the estate from all claims and interests of the creditors. The taxes which accrue post-confirmation are incurred by the debtor, not the estate, and therefore, are not administrative expenses.

Although the analysis is different, the conclusion is the same for the taxes which accrue post-petition but prior to confirmation. In two of the five cases, the taxes accrued before confirmation: the Otis and Wanda Franklin case, and the Linda Brown case. A close reading of the Code indicates that section 503 is not applicable to *any* post-petition tax claim in a chapter 13 case, prior or subsequent to confirmation.

Section 1305(a) clearly indicates that the government holds the post-petition tax claim "against the debtor" and not the estate. *See In re Wright,* 66 B.R. 125 (Bankr.D.Kan.1984) (Bankruptcy Judge James A. Pusateri held that post-petition tax claims fall within § 1305 rather than § 503.) Furthermore, the code provides in section 346(d), a special tax provision, that "[i]n a case under chapter 13 of this title, any income of the estate or the debtor may be taxed on or measured by income *only to the debtor, and may not be taxed to the estate* (emphasis provided)." As such, if a post-petition tax claim is against only the debtor and not the estate, the claim is not an actual, necessary cost and expense of preserving the estate under section 503(b)(1)(A). Nor is it an administrative

expense under section 503(b)(1)(B) because the tax was not incurred by the estate.

This conclusion is completely in line with the intent of the drafters of the Code. It is a well settled principle of statutory interpretation that all parts of a statute, if at all possible, should be given effect. *Jarecki v. Searle & Co.,* 367 U.S. 303, 307–308, 81 S.Ct. 1579, 1582, 6 L.Ed.2d 859 (1961); *In re Murray,* 27 B.R. 445 (Bankr.M.D.Tenn. 1983).

A statute should not be interpreted so as to render one part inoperative, superfluous or insignificant. *Id.* If this Court held that a post-petition tax claim should be brought under section 503 rather than section 1305(a)(1), the government would never use section 1305(a)(1) because section 503 has a higher priority status. The holding would render section 1305(a)(1) superfluous or at least insignificant. Congress enacted section 1305(a)(1) for a purpose. Voluntary participation in a plan under section 1305(a)(1) by the holder of a post-petition tax claim may be beneficial to all concerned. Participation will provide a struggling debtor with more time within which to satisfy a post-petition tax claim than would otherwise be permitted under applicable nonbankruptcy laws or court orders dispensing relief from the automatic stay. 5 Collier on Bankruptcy ¶ 1305.01[2][B] (15th ed. 1986).

In summary, the Court holds that federal income taxes incurred post-petition are not entitled to administrative expense status under 11 U.S.C. § 503(b)(1) but is allowed as a post-petition claim under 11 U.S.C. § 1305(a)(1).