In re James and Dianne
RIPLEY, Debtors.

UNITED STATES of America,
Plaintiff–Appellant,

v.

James and Dianne RIPLEY,
Defendants–Appellees.

No. 90–5558.

United States Court of Appeals,
Fifth Circuit.

March 5, 1991.

Gary R. Allen, Chief, Janet Kay Jones, Gary D. Gray, Appellate Section, U.S. Dept. of Justice, Tax Div., Washington, D.C., Joseph A. Pitzinger, Linda C. Groves, Tax Div., Dept. of Justice, Dallas, Tex., for plaintiff-appellant.

Paul W. Rosenbaum, San Antonio, Tex., for defendants-appellees.

Before BROWN, SMITH and WIENER, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

The government asks us to determine that the bankruptcy and district courts erred in disallowing a proof of claim filed by the Internal Revenue Service (IRS). Those courts held that where a self-employed individual is required to make estimated tax payments periodically throughout the tax year, the IRS's claims "become payable" not at the time the individual is required to file his tax return, but rather when those installment payments are due. The bankruptcy and district courts accordingly held that the IRS had missed the deadline for filing proofs of claims and that its claim thus was disallowed. Because we conclude that the IRS's claim "became payable" when the instant taxpayers were required to file their tax return, we reverse.

## I.

The taxpayers are James Ripley, a self-employed oral surgeon, and his wife, Dianne. Self-employed individuals such as Ripley must pay a self-employment tax analogous to the Social Security tax imposed upon employers and their employees.[1] Income tax obligations, of course, are also imposed upon self-employed individuals.

To collect both income and Social Security taxes, the IRS relies primarily upon employers to withhold certain amounts from employees' paychecks. *See* 26 U.S.C. § 3102 (1989) (requiring employers to withhold Social Security taxes from employees' wages); 26 U.S.C. § 3402 (1989) (requiring employers to withhold income taxes). However, in the case of a self-employed individual, the withholding mechanism is inapposite. Accordingly, the IRS employs an alternative collection scheme: the estimated tax payment procedure.

Under that scheme, individuals who do not fulfill their income and Social Security

---

1. Section 1401 of the Internal Revenue Code of 1986 provides in pertinent part, "In addition to other taxes, there shall be imposed for each taxable year, on the self-employment income of every individual, a tax equal to [a given] percent of the amount of the self-employment income for such taxable year...." 26 U.S.C. § 1401 (1988). Section 3101 of the Code imposes a similar obligation upon employees who are not self-employed. *See* 26 U.S.C. § 3101 (1989).

Section 3111 requires employers to pay Social Security taxes. *See* 26 U.S.C. § 3111 (1989). In a sense, self-employed individuals satisfy the obligations imposed upon both parties in the employer-employee context: Self-imposed individuals pay a tax approximately double that paid by, respectively, employers and employees. *See* 26 U.S.C. § 1401 (1988); 26 U.S.C. §§ 3101, 3111 (1989).

tax obligations through withholding[2] estimate their tax liability and make four quarterly installment payments. 26 U.S.C. § 6654 (Supp.1990).[3] Such taxpayers include a payment voucher (Form 1040–ES) with each installment. Although required to do so, the Ripleys apparently did not make any installment payments in 1987.

In November of that year, the Ripleys filed a petition in bankruptcy under Chapter 13 of the bankruptcy code. In the schedules accompanying their petition, the Ripleys indicated that the IRS held a priority claim of $21,000, which was to be paid in full under the proposed plan.[4] After the deadline for filing claims passed, the court confirmed the plan. The IRS did not file a claim before the deadline.[5]

In May 1988 the Ripleys filed their tax return, which indicated that they owed $19,039 in taxes and $871 in penalties. At this point, the IRS filed a proof of claim, asserting entitlement to income and self-employment taxes for 1987. The IRS filed its claim pursuant to section 1305 of the Bankruptcy Code, which allows claimants to file proofs of certain claims that "become payable" after the commencement of the case.[6]

The Ripleys objected to the IRS's claim, arguing that three-fourths thereof "became payable" before the commencement of the case and that thus the claim was presented too late.[7] More specifically, the Ripleys contended that the unpaid installment payments due following each of the first three quarters of 1987 were "payable" on those respective dates and thus were prepetition claims that could not be asserted under section 1305.[8]

The bankruptcy court agreed with the Ripleys and rejected the proof of claim. The government unsuccessfully appealed

---

2. This includes both self-employed individuals and those persons who have inadequate amounts collected through withholding.

3. Section 6654 provides in relevant part,
  (c) Number of required installments; due dates.—For purposes of this section—
    (1) Payable in 4 installments.—There shall be 4 required installments for each taxable year.
    (2) Time for payment of installments.—
In the case of the following required installments:   The due date is:

    1st ............April 15
    2nd ...........June 15
    3rd............September 15
    4th ...........January 15 of the following taxable year.

  (d) Amount of required installments.—For purposes of this section—
    (1) Amount.—
    (A) In general.—Except as provided in paragraph (2), the amount of any required installment shall be 25 percent of the required annual payment.
    (B) Required annual payment.—For purposes of subparagraph (A), the term "required annual payment" means the lesser of—
    (i) 90 percent of the tax shown on the return for the taxable year (or, if no return is filed, 90 percent of the tax for such year), or
    (ii) 100 percent of the tax shown on the return of the individual for the preceding taxable year.
    Clause (ii) shall not apply if the preceding taxable year was not a taxable year of 12 months or if the individual did not file a return for such preceding taxable year.
26 U.S.C. § 6654 (Supp.1990).

4. A chapter 13 plan must provide for the full payment of all claims entitled to priority under § 507 of the bankruptcy code. 11 U.S.C. § 1322(a)(2) (Supp.1990); *see also* 11 U.S.C. § 507(a)(7) (Supp.1990) (giving priority status to tax claims).

5. Under § 341(a) of the Bankruptcy Code, "the United States trustee shall convene and preside at a meeting of creditors." 11 U.S.C. § 341(a) (Supp.1990). Bankruptcy Rule 3002 provides, "In a chapter 7 liquidation or chapter 13 individual's debt adjustment case, a proof of claim shall be filed within 90 days after the first date set for the meeting of creditors called pursuant to § 341(a) of the Code...."

6. Section 1305, entitled "Filing and allowance of postpetition claims," states that "[a] proof of claim may be filed by any entity that holds a claim against the debtor ... for taxes that become payable to a governmental unit while the case is pending...." 11 U.S.C. § 1305(a)(1) (1979).

7. The debtors relied upon rule 3002 for their contention that the IRS's proof of claim was untimely filed. *See supra* note 5.

8. The Ripleys conceded that their tax liability for the fourth quarter was a postpetition debt and that a claim therefor could be allowed by the bankruptcy court.

to the district court pursuant to 28 U.S.C. § 158(a) (Supp.1990).

## II.

This matter turns upon the proper construction of Bankruptcy Code section 1305, which allows an entity to file a proof of claim "for taxes that become payable to a governmental unit while the case is pending." 11 U.S.C. § 1305(a)(1) (1979). More specifically, the question is whether the taxes in question "became payable" when the Ripleys were required to file their tax return, or instead when the estimated tax installment payments were due. If the taxes became payable when the Ripleys were required to file their return, the IRS's proof of claim was properly filed under section 1305. If the taxes became payable when the installment payments were due, the claim was barred as untimely under rule 3002.[9]

As a general rule, bankruptcy proceedings do not address postpetition claims: "The basic scheme of the Bankruptcy Code is to affect claims arising prior to the filing of the petition under title 11." 5 *Collier on Bankruptcy* ¶ 1305.01[1] (L. King 15th ed. 1988) (footnotes omitted).[10] When such a claim arises, the entity possessing it usually will seek satisfaction of the debt outside of the bankruptcy proceedings.[11]

However, a certain limited number of such postpetition claims may become part of a chapter 13 plan. Section 1305 states that a proof of claim may be filed by an entity that holds a claim against the debtor (1) for "taxes that become payable to a governmental unit while the case is pending" or (2) that is a consumer debt arising after the order for relief. 11 U.S.C. § 1305(a) (1979). This provision allows parties to satisfy their claims without waiting until the close of the case, when they would resort to non-bankruptcy law.[12]

**9.** The parties agree that if the IRS's proof of claim was barred as untimely under rule 3002, the Ripleys' tax debt would be discharged without payment. Section 1328, entitled "Discharge," provides in part, "As soon as practicable after completion by the debtor of all payments under the plan, ... the court shall grant the debtor a discharge of all debts provided for by the plan or disallowed under section 502 of this title...." 11 U.S.C. § 1328(a) (1979). Courts have interpreted this section's "provided for by the plan" language to cover situations in which the debt is mentioned in the schedules accompanying the debtor's plan but is not part of the debtor's payments under the plan. *See, e.g., In re Richards,* 50 B.R. 339, 341 (E.D.Tenn. 1985) ("Certainly § 1328(a) does not mean that every debt which is scheduled but not paid, because the creditor fails to file a proof of claim, is not discharged." (Citations omitted.)).

**10.** *See also In re Glover,* 107 B.R. 579, 580 (Bankr.S.D.Ohio 1989) ("[t]he Bankruptcy Code is generally intended to affect only those claims which arise prior to commencement of the case" (citing 11 U.S.C. § 502(b))); *In re Hester,* 63 B.R. 607, 609 (Bankr.E.D.Tenn.1986) ("[a] bankruptcy case under chapter 7 or chapter 13 of the Code does not, as a general rule, affect a postpetition claim" (citing 11 U.S.C. §§ 101(9), 501(a), 502, 103(a))).

**11.** *See In re Gyulafia,* 65 B.R. 913, 915–16 (Bankr.D.Kan.1986) (when government possesses postpetition tax claim, it "has a choice between voluntary participation in the wage-earner plan under section 1305 or going directly against the debtor pursuant to applicable non-

bankruptcy law"); 5 *Collier on Bankruptcy, supra,* at ¶ 1305.01[2] ("[t]he holder of ... a postpetition claim may refrain from filing proof of the postpetition claim, thereby waiving the right to distribution under the chapter 13 plan, in hopes of recovering against the debtor after the closing of the case"); 5 *Bkr.L.Ed., Code, Commentary and Analysis* § 45.49 (1985) ("[i]n some instances, a creditor chooses not to file a proof of claim, perhaps believing that a higher percentage of the debt can be recovered if it waits to collect the debt from the debtor until the case is closed").

**12.** The benefits of § 1305 are widely recognized. In *Gyulafia* the court stated, "Voluntary participation in a plan under section 1305(a)(1) by the holder of a post-petition tax claim may be beneficial to all concerned" because "[p]articipation will provide a struggling debtor with more time within which to satisfy a post-petition tax claim than would otherwise be permitted under applicable nonbankruptcy laws...." 65 B.R. at 917.

Despite these benefits, the code does not authorize a debtor to file a claim for postpetition debts on behalf of the claimant. *In re Glover,* 107 B.R. at 581; *In re Rothman,* 76 B.R. 38, 40 n. 1 (E.D.N.Y.1987) (" '[t]he option to file and, thereby, to be paid under a plan lies with the taxing authority' " (citation omitted)); *In re Dickey,* 64 B.R. 3, 4 (Bankr.E.D.Va.1985). *Cf.* 11 U.S.C. § 501(c) (authorizing debtor to file proof of claim on behalf of creditors who have not filed); Bankr.R. 3004 (delineating time during which debtor may file claim on behalf of creditor).

This court has never determined when taxes "become payable" for purposes of section 1305. However, the statutory language indicates that Congress intended to refer to those taxes that come due during the pendency of the case; in other words, taxes that have "become payable" are those that *must be paid* now. One might argue, however, that taxes that have "become payable" are those that are "able to be paid," in the sense that there comes a point at which the taxpayer is *permitted* (but not necessarily *required*) to pay the tax, as if there were a magical date before which the government would not accept one's money but after which it would.

This argument ignores the customary usage of the word "payable" and the context of section 1305. According to a noted authority, "payable" means not only "[c]apable of being paid" but also "justly due" and "legally enforceable." Black's Law Dictionary 1128 (6th ed. 1990). The latter of these is the only reasonable meaning to be affixed to the word as it is used in section 1305. Black's continues, "A sum of money is said to be payable when a person is under an obligation to pay it. Payable ... normally means that the debt is payable at once." *Id.*[13]

The use of the word "payable" in the law of commercial paper comports with our construction of that term in the instant context. When a negotiable instrument is "payable" to bearer or to order, the sum therein *must be paid* to the bearer or to the order of the person therein specified. *See* U.C.C. §§ 3–110, 3–111.

■ The Ripleys do not disagree with our construction of the phrase "become payable"[14]; instead they reject the government's contention that the taxes are not required to be paid until the tax return is required to be filed following the end of the taxable year. The Ripleys argue that the income and self-employment taxes became payable when the quarterly installment payments were due.[15] Rejecting this contention, we conclude that the Ripleys' 1987 income and self-employment taxes became payable on April 15, 1988, when their tax return was due.

The Internal Revenue Code of 1986 is the appropriate place to look in determining when taxes "become payable." Section 6151 states, "when a return of tax is required under this title or regulations, the person required to make such return shall, without assessment or notice and demand from the Secretary, pay such tax to the internal revenue officer with whom the return is filed, and *shall pay such tax at the time and place fixed for filing the return ....*" 26 U.S.C. § 6151 (1989) (emphasis added).[16] This statutory provision reflects the annual nature of income and self-employment taxes. *See Commissioner v. Sunnen,* 333 U.S. 591, 598, 68 S.Ct. 715, 719–20, 92 L.Ed. 898 (1948) ("[i]ncome tax-

---

13. *See also Furrow v. Commissioner,* 292 F.2d 604, 607 (10th Cir.1961) (" '[t]he word payable, when used in connection with commercial transactions, means that which is to be paid rather than that which may be paid' " (quoting *Ingram v. Mandler,* 56 F.2d 994, 997 (10th Cir. 1932))); *Transbel Inv. Co. v. Roth,* 36 F.Supp. 396, 399 (S.D.N.Y.1940) (" '[p]ayable' means 'due' "); *In re Pennetta,* 19 B.R. 794, 796 (Bankr. D.Colo.1982) (equating "become payable" with "legally due and owing"). *Pennetta* is discussed in detail *infra.*

14. Nor did the bankruptcy and district courts disagree with this interpretation, each stating that "payable" means "due and owing."

15. Presumably in aid of this argument, the Ripleys (and the bankruptcy and district courts) repeatedly refer to the payment vouchers that must be filed along with the quarterly install-

ment payments as "tax returns." However, Form 1040-ES, which must accompany estimated tax payments, is entitled "Payment Voucher." Taxpayers utilizing the estimated tax payment method rather than withholding must still file tax returns after the close of the taxable year. *See* 26 U.S.C. § 6012 (1989) (requiring filing of income tax returns); 26 U.S.C. § 6017 (1989) (requiring filing of self-employment tax returns); 26 U.S.C. § 6072 (1989) (requiring said returns to be filed on April 15). In addition, the penalty imposed for failing to file a tax return is not imposed for failing to file Form 1040-ES. *See* 26 U.S.C. § 6651 (Supp.1990).

16. *See also Pan Am. Van Lines v. United States,* 607 F.2d 1299, 1301 (9th Cir.1979) ("the tax is due on the date the return is originally due"); *In re Starkey,* 49 B.R. 984, 987 (Bankr.D.Colo.1984) ("taxes are due and payable without assessment or notice at the time that the tax returns are due").

es are levied on an annual basis"); 26 U.S.C. § 1401 (1988) (imposing self-employment tax "for each taxable year").

In addition, the IRS cannot seek immediate payment of an unpaid quarterly installment: It must wait until after the taxpayer has filed his annual tax return. *See* 26 U.S.C. § 6201(b)(1) (1989).[17] Relatedly, the IRS cannot immediately seek collection of the penalty imposed for deficient installment payments.

Under the estimated tax payment procedure, the installment payments must total at least 90 percent of the tax eventually due or 100 percent of the tax paid in the prior year. Accordingly, to determine whether a particular installment payment was deficient (for purposes of calculating any addition to the tax), the IRS must wait until after the tax return is filed.[18] Moreover, the limitations period within which the IRS must assess a tax deficiency starts when the return is filed, not when the installment payment is due. *See* 26 U.S.C. § 6501(a) (Supp. 1990) ("the amount of any tax imposed by this title shall be assessed within 3 years after the return was filed").

Furthermore, the courts that have considered the issue have concluded that taxes "become payable" when the tax return is filed. In *Pennetta,* the sequence of events was as follows: First, the debtors filed their tax return; second, the debtors filed their chapter 13 petition; third, the IRS assessed the tax and filed a proof of claim. 19 B.R. at 795. Responding to the debtors' assertion that the proof of claim was untimely filed, the government argued that the claim was timely under section 1305 because the tax became payable on the

date of assessment rather than the due date of the return. *Id.*

The court rejected this argument, declaring that the date of assessment " 'consists of no more than the ascertainment of the amount due and the formal entry of that amount on the books of the secretary' " and is entirely different from the date upon which the tax "becomes payable." *Id.* at 796 (quoting *United States v. Dixieline Fin., Inc.,* 594 F.2d 1311, 1312 (9th Cir. 1979)). Instead, the court held, the taxes became payable at the time the tax return was due, because "[t]he 1978 taxes of the Debtor in the instant case became an obligation to the United States on April 15, 1979." *Id.* The court accordingly held that the IRS did not possess a postpetition claim under section 1305.[19] *Accord In re Phillips,* 27 B.R. 94 (Bankr.E.D.Va.1983) (citing *Pennetta* ).

The court in *In re Rothman,* 76 B.R. 38 (Bankr.E.D.N.Y.1987), reached a similar result. There, the debtor filed her chapter 13 plan in 1980. After discharge, the state tax commission sought to recover taxes for 1976 and 1980. The debtor returned to the bankruptcy court, arguing that the state, in seeking collection of those taxes, was violating the court's discharge order. Whether the tax liability for the two years was discharged depended upon whether the respective liabilities were pre- or postpetition. The court held that the 1980 taxes were a postpetition liability because they became payable in April 1981 (when the return was filed), after the filing of the petition. *Id.* at 40.

The court in *In re Ryan,* 78 B.R. 175 (Bankr.E.D.Tenn.1987), faced a situation similar to that in the instant case. The debtors filed their bankruptcy petition in

---

**17.** Section 6201 provides in part, "No unpaid amount of estimated income tax required to be paid under section 6654 or 6655 shall be assessed."

**18.** Even if the taxpayer seeks to avoid the addition through paying 100% of the prior year's tax (as opposed to 90% of the current year's tax), the IRS will not know that there is a deficiency until after the return is filed, even if a particular quarterly installment payment is less than 25% of the prior year's tax. In such a case, the IRS cannot assume that that particular payment is

deficient, because the payment, when added to the other three installment payments, might total 90% or more of the current year's tax. In short, the IRS can calculate neither the tax owed nor the addition until after the tax return is filed.

**19.** *Pennetta* demonstrates that our conclusion that the taxes become payable when the return is filed is a two-edged sword. Although it happens to favor the government in the instant case, it will not do so in all cases.

September 1981, and the parties disputed whether the taxes for 1981 were a pre- or postpetition debt. After pondering the possibility of splitting the 1981 taxes into pre- and postpetition portions, the court ultimately concluded "that the 1981 taxes should be treated as postpetition taxes under § 1305(a)(1)...." *Id.* at 183. The court held, "The 1981 taxes ... were not due until 1982," referring to the date on which the debtors' tax return was due. *Id.*[20]

The district court *a quo* erroneously relied upon *In re Miller*, 90 B.R. 317 (Bankr. E.D.Tenn.1988), in concluding that three-fourths of the tax the Ripleys owed was a prepetition debt. In *Miller*, the IRS filed a claim for personal income taxes before the bar date for filing claims. *Id.* at 319. After the deadline, it amended the claim to include income taxes for another year. *Id.* The IRS filed another amendment, seeking recovery of unpaid corporate employment taxes, for which the debtor allegedly was liable under 26 U.S.C. § 6672. *Id.*

The debtors objected to this second amendment, arguing that it should not relate back to the date of the original filing. *Id.* The court accepted their assertion, but the IRS had an additional argument in reserve: It contended that the claim for the unpaid corporate employment taxes should be allowed as a postpetition claim under section 1305. *Id.* at 324.

The petition in *Miller* was filed during the third quarter of 1986. The court held that the taxpayers' derivative liability for the employment taxes for the first two quarters was a prepetition claim[21] but requested further briefing with respect to the third quarter. *Id.* at 325. The district court in the instant case relied upon this holding to conclude that the Ripleys' liability for the first three quarters of 1987 constituted a prepetition claim.[22]

*Miller* is plainly distinguishable from the instant case. In *Miller,* the government sought recovery of a truly quarterly tax rather than of annual taxes, as in this case. Internal Revenue Code section 3111, 26 U.S.C. § 3111, which is part of the Federal Insurance Contributions Act, imposes the familiar Social Security tax upon employers. The accompanying regulations require employers to file a tax return not on an annual basis, but following the end of each quarter.[23] The court's holding in *Miller* thus fully comports with (and lends further support to) our view that taxes "become payable" when the tax return is due.

The district court attempted to distinguish the above-discussed cases on the ground that none of them involved the estimated tax installment payment procedure present in this case. This is not the basis of a valid distinction, for the means by which a tax is collected does not change the date on which it "becomes payable."

As discussed above, the government relies primarily upon employers to collect income and Social Security taxes from their employees. Employers collect these taxes through the customary withholding mechanism. *See* 26 U.S.C. §§ 3102, 3402. However, in the case of a self-employed individual such as Ripley, withholding is inapposite. Such persons must use the estimated tax procedure, which simulates withholding by requiring taxpayers to remit payments to the IRS throughout the year. There is no logical reason that the date upon which

---

**20.** In addition, the court distinguished "become payable" from "become owing." It stated that " '[b]ecome owing' appears to mean incurred during a case," while taxes that "become payable" are those that come due during the pendency of the case. 78 B.R. at 183–84.

**21.** The court reserved judgment as to the third quarter, requesting additional briefing. 90 B.R. at 325.

**22.** In a motion to alter or amend the judgment, the government challenged the district court's reliance upon *Miller*. The court denied the motion, concluding both that such reliance was correct and that, in any event, the ultimate decision was proper.

**23.** The relevant regulation provides in part that "every employer required to make a return under the Federal Insurance Contributions Act ... shall make a return for each subsequent calendar quarter...." 26 C.F.R. § 31.6011(a)–1 (1990). *Cf.* 26 U.S.C. § 6072 (1989) (requiring single, annual return for income and self-employment taxes).

taxes "become payable" should depend upon the collection mechanism employed.

The Ripleys nonetheless argue that section 6654,[24] which governs the estimated tax procedure, mandates the result reached by the district court. Subsection (c), entitled "Number of required installments; due dates," uses the phrase "[p]ayable in 4 installments." 26 U.S.C. § 6654(c)(1). The Ripleys contend that this use of the word "payable" requires that we construe section 1305's "become payable" as referring to the end of each quarter. We disagree.

That the installments are due at the end of each quarter does not mean that the tax itself is due at that time. Furthermore, section 6151 patently indicates that the tax itself is due when the return is required to be filed. In addition, section 6513(b)(2) provides that "[a]ny amount paid as estimated income tax for any taxable year shall be deemed to have been paid on the last day prescribed for filing the return...." 26 U.S.C. § 6513(b)(2) (1989). The code recognizes that the quarterly installment payments are merely prepayments, not payments of the tax itself.[25] Lastly, the Ripleys' interpretation of section 6654 contravenes the annual nature of the income and self-employment taxes.

The Ripleys further observe that the government imposes penalties upon those underpaying estimated tax installments[26]; they concomitantly argue that a tax is "payable" within the meaning of section 1305 on the date after which penalties are imposed for underpayment. However, the fact that penalties are imposed for underpayment of installments does not alter either the annual nature of these taxes or the language of section 6151.

The government penalizes underpaying taxpayers to promote proper functioning of the estimated tax payment collection mechanism. In addition, even though penalties may begin accruing on the date of the underpayment, those penalties do not become payable on that date. As discussed above, the IRS can neither calculate nor seek collection of the penalties (or the taxes themselves) until after the taxpayer files his return. The end of each quarter is a critical date in *calculating* the penalty after the return is filed; it is not significant with regard to when the IRS can *assess or collect* the penalty.

In a related vein, the Ripleys allege that Bankruptcy Code section 547 supports their argument that the taxes "become payable" quarterly. Section 547(a)(4) provides that "a debt for a tax is incurred on the day when such tax is last payable without penalty." 11 U.S.C. § 547(a)(4) (Supp.1990). Although this point is not fully explicated in their brief, the Ripleys seem to argue that the tax "becomes payable" (i.e. "is incurred") at the end of each quarter because that is "the day when such tax is last payable without penalty."

This argument is flawed in a number of respects. First, as discussed above, the end of the quarter is the last day by which the *installment payment* is payable without penalty. We do not chop logic in recognizing a difference between paying installments and paying the tax itself. The due dates of the installments differ from the due date of the tax itself.

Second, section 547(a)(4) must be read in context. It delineates which prepetition transfers may be recovered by the bankruptcy trustee.[27] Because the trustee may

24. *See supra* note 3 for statutory text.

25. Section 6315 provides, "Payment of the estimated income tax, or any installment thereof, shall be considered payment on account of the income taxes imposed by subtitle A for the taxable year." 26 U.S.C. § 6315 (1989).

26. *See* 26 U.S.C. § 6654(a), (b) (1989).

27. Section 547(b) provides in part,

Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—
(1) to or for the benefit of a creditor;
(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
(3) made while the debtor was insolvent;
(4) made—
(A) on or within 90 days before the date of the filing of the petition; or

avoid only those payments that are "on account of an *antecedent* debt" (emphasis added), the date on which the debt was incurred is critical. Section 547(a)(4) supplies that date with respect to tax claims for purposes of this section; it is not intended as a universal statement of when taxes "become payable." Accordingly, even if we were to assume that the end of each quarter is the date upon which the *tax* is last payable without penalty, section 547(a)(4) does not necessarily determine when the tax "becomes payable" for purposes of section 1305. The Internal Revenue Code and all relevant reported cases indicate that taxes "become payable" when the tax return is required to be filed.

The legislative history of section 547 further undermines the Ripleys' view. In the congressional reports accompanying the enactment of this provision, the drafters stated,

> This provision will not apply to permit the trustee to recover estimated tax payments by a debtor, *because no tax is due when the payments are made.* Therefore, the tax on account of which the payment is made is not an antecedent debt.

H.R.Rep. No. 595, 95th Cong., 2d Sess. 373, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5963, 6329 (emphasis added).[28]

> (B) between ninety days and one year before the date of the filing of the petition if such creditor at the time of such transfer was an insider; and
> (5) that enables such creditor to receive more than such creditor would receive if—
> (A) the case were a case under chapter 7 of this title;
> (B) the transfer had not been made; and
> (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b) (1979 & Supp.1990).

**28.** Other legislative statements support this view. Section 547 not only lists those preferential transfers that the trustee may avoid, but also indicates those that he may not. The latter category includes those transfers "made in the ordinary course of business or financial affairs of the debtor and the transferee." 11 U.S.C. § 547(c)(2)(B) (Supp.1990). The original version of the statute also prevented the trustee from avoiding those transfers "made not later than 45 days after such debt was incurred." 11

We further observe that this construction of section 1305 comports with one of the "golden rules" of statutory interpretation. A leading statutory construction treatise states "that unreasonableness of the result produced by one among alternative possible interpretations of a statute is reason for rejecting that interpretation in favor of another which would produce a reasonable result." 2A N. Singer, *Sutherland Statutory Construction* § 45.12 (Sands 4th ed. 1984) (footnote omitted).[29]

The Ripleys' construction leads to an unreasonable result. A hypothetical taxpayer might earn both wage and investment income, both of which are subject to income tax. His employer withholds income tax from him throughout the year. Since withholding is not feasible with respect to the investment income, the taxpayer makes estimated tax payments on a quarterly basis. During the third quarter, the taxpayer files a petition in bankruptcy.

Under the Ripleys' proffered interpretation, the income tax on the investment income (collected through the installment payment method) would be a prepetition debt, whereas the income tax on the wage income (collected through withholding) would be a postpetition debt. It is patently illogical to treat different portions of the same tax in this manner.

U.S.C. § 547(c)(2)(B) (1979), *repealed by* Bankruptcy Amendments and Federal Judgeship Act of 1984, § 462(c), 98 Stat. 333, Pub.L. No. 98–353. The floor statements indicate that "the 45–day period ... is to begin running, in the case of taxes from the last due date, including extensions, of the *return* with respect to which the tax payment was made." 124 Cong.Rec. 32350, 32364, 32417 (statement of Rep. Edwards); 124 Cong.Rec. 33989, 34017 (statement of Sen. DeConcini) (emphasis added). Accordingly, the IRS is correct in asserting that "Congress understood the phrase 'when such tax is last payable without penalty' in Section 547(a)(4) to mean when the return was last due."

**29.** *See also Commissioner v. Brown,* 380 U.S. 563, 571, 85 S.Ct. 1162, 1166, 14 L.Ed.2d 75 (1965); *Sierra Club v. Train,* 557 F.2d 485, 490 (5th Cir.1977); *Worthy v. United States,* 328 F.2d 386, 391 (5th Cir.1964).

The Ripleys attempt to ameliorate the unreasonableness of this result by suggesting that the IRS could file an unliquidated or contingent claim, move for an extension of the time in which to file a claim, or file a claim for an estimated amount. None of these suggestions makes sense, however. At the time the petition is filed, the IRS does not even know that it is owed any money, especially if, as in this case, the taxpayers have failed to file any payment vouchers at all. Consequently, it could not accurately estimate the tax debt. Requiring the IRS to file for extensions until such time as the debtor has filed his tax return would be a wasteful exercise; it is conceivable that the debtor may not even owe any tax.

In summary, we conclude that the taxes in question became payable when the final tax return for the year was required to be filed. Accordingly, we REVERSE the judgment of the district court and REMAND for further proceedings.