GRABER, Circuit Judge, dissenting:
I respectfully dissent.
Shelli Renee and Teresa M. Joye concede that, if their outstanding taxes for 2000 gave rise to a post-petition claim, the taxes would survive their discharge in bankruptcy. Under 11 U.S.C. § 1305(a)(1), the government may file a proof of claim “for taxes that become payable to a governmental unit while the case is pending.” The question, then, is whether the taxes in this case “bec[a]me pay *1082 able” while the Joyes’ bankruptcy case was pending.
As the majority acknowledges, the term “payable” in this statute is ambiguous. See maj. op. at 1074-76. “Payable” could mean “calculable” or “fixed,” or it could mean “must be paid now” or “legally enforceable.” I would read it, as did the Fifth Circuit, to mean “must be paid now” or “legally enforceable.” United States v. Ripley (In re Ripley), 926 F.2d 440, 444 (5th Cir.1991). As the Ripley court explained, Black’s Law Dictionary states that a sum of money normally is said to be “payable” when a person is obliged to discharge the debt at once. Id. So read, the statute entitles the Franchise Tax Board to collect taxes from the Joyes for the year 2000 because the taxes became payable (“must be paid now” or “legally enforceable”) on April 15, 2001; the Joyes had filed their bankruptcy case on March 7, 2001, and their bankruptcy case remained pending on April 15, 2001. I come to this interpretation for four main reasons.
First, the fundamental purpose of this particular subsection is to permit governmental units to collect taxes as part of a bankruptcy plan. The Bankruptcy Code is concerned primarily with pre-petition debts, as a bankruptcy plan attempts to release the debtor “from pre-petition debts so that she can be given a ‘fresh start.’ ” Boeing N. Am., Inc. v. Ybarra (In re Ybarra), 424 F.3d 1018, 1026 (9th Cir.2005). Claims that arise after the filing of the bankruptcy petition, or post-petition claims, generally are not part of the bankruptcy case (though they may be collected outside the bankruptcy proceedings). 8 Collier on Bankruptcy ¶ 1305.01 (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev.). But Congress has crafted a few statutory exceptions to that rule, one of which is relevant here. In enacting 11 U.S.C. § 1305, titled “Filing and allowance of postpetition claims,” Congress allowed a governmental unit to which taxes “become payable” while a bankruptcy case is pending to file an otherwise impermissible post-petition claim with the bankruptcy court, id. § 1305(a)(1).
Our task in construing a statute is to discern congressional intent. See Dole v. United Steelworkers of Am., 494 U.S. 26, 35, 110 S.Ct. 929, 108 L.Ed.2d 23 (1990). To do so, we “look to the provisions of the whole law, and to its object and policy.” Id. (internal quotation marks omitted). That Congress chose to allow governmental units to participate in bankruptcy proceedings as creditors — even as to claims that ordinarily would have to be collected separately — manifestly evinces a strong intent to allow for collection of taxes as part of the bankruptcy plan. If one plausible reading cuts off tax liability, while another does not, we should adopt the reading that comports with Congress’ overall intent.
The majority opinion is also flawed because it equates § 1305(a)(1) with § 502(i), maj. op. at 1076, even though those sections employ substantially different formulations. Section 1305(a)(1) pertains to “taxes that become payable,” while § 502(i) refers to a “claim” that “arise[s].” A “claim” is not the same as “taxes,” and a claim for taxes may “arise” before it “become[s] payable.” When interpreting statutes, we presume that Congress meant to convey different concepts when it used different words. See, e.g., SEC v. McCarthy, 322 F.3d 650, 656 (9th Cir.2003) (“It is a well-established canon of statutory interpretation that the use of different words or terms within a statute demonstrates that Congress intended to convey a different meaning for those words.”). The majority therefore errs in concluding, because of the text and scholarly interpretations of § 502(i), that only taxes incurred post-petition may be treated as post-petition *1083 claims under § 1305(a). See maj. op. at 1076.
Second, because of the importance of national uniformity in administering the Bankruptcy Code, we should interpret § 1305(a), if possible, the same way as our sister circuits have interpreted it. As noted, the Fifth Circuit reads the statute as I do.
The majority relies heavily on a Bankruptcy Appellate Panel (“BAP”) case from the Tenth Circuit, Dixon v. IRS (In re Dixon), 218 B.R. 150 (10th Cir. BAP 1998). Maj. op. at 1075-76. But there has been no circuit split until today. Only the Fifth Circuit has ruled on what “payable” means in § 1305(a)(1). A BAP opinion is equivalent only to an opinion from a federal district court in another circuit. The Tenth Circuit’s BAP (like our own Ninth Circuit BAP) consists of a group of non-Article III judges appointed by a federal circuit court to hear appeals from the bankruptcy courts. In circuits that do not have BAPs, bankruptcy court decisions are appealed to federal district courts. See 28 U.S.C. § 158(a). We should not, therefore, give the Tenth Circuit’s BAP decision any more weight than that of a district court from another circuit. Cf. Rosson v. Fitzgerald (In re Rosson), 545 F.3d 764, 772 n. 10 (9th Cir.2008) (“BAP opinions are not binding on this court .... ”); Bank of Maui v. Estate Analysis, Inc., 904 F.2d 470, 472 (9th Cir.1990) (declining to rule on the authoritative effect of a BAP decision, but noting that “BAP decisions cannot bind the district [and circuit] courts themselves. As article III courts, the district [and circuit] courts must always be free to decline to follow BAP decisions and to formulate their own rules within their jurisdiction.”). To the extent that the question is one of federal law, if it is reasonable to do so we should harmonize our holding with that of the Fifth Circuit, which is the only other federal court of appeals to have decided the question before us.[1]
Third, the majority’s view assumes that a taxpayer can do nothing to alter her tax obligations between January 1 and April 15. That assumption is not accurate. A taxpayer may, for example, contribute to an Individual Retirement Account (“IRA”) between January 1 and April 15, 2009, and deduct that contribution from her 2008 income when she files her 2008 tax return, as long as she specifies that the contribution is to be attributed to 2008. See 26 U.S.C. § 219(a), (f)(3) (noting that deductible contributions can be made up to the date the tax return is due); State of California Franchise Tax Board Publication 1005, Pension and Annuity Guidelines 4 (“The California Treatment of IRAs is generally the same as the federal treatment.”). So her tax liability cannot be truly “fixed” or “calculable” until April 15, because she can alter her income (for tax purposes) until that date each year.
Fourth, as the majority recognizes, we turn to state law to determine whether the Joyes’ taxes became payable under California law during the pendency of their bankruptcy case. Maj. op. at 1078; see Raleigh v. Ill. Dep’t of Revenue, 530 U.S. 15, 20, 120 S.Ct. 1951, 147 L.Ed.2d 13 (2000) (“The ‘basic federal rule’ in bankruptcy is that state law governs the substance of claims .... ” (citation omitted)). California’s Revenue and Taxation Code governs the Joyes’ obligations to the Franchise Tax Board. Section 19001 of the California code provides that taxes “shall be paid at the time and place fixed for filing the return (determined without regard to any extension of time for filing the *1084 return).” Under that text, “the time ... fixed for filing the return” in the absence of an extension of time for filing the return is April 15. Even if the tax is capable of calculation on January 1, the Franchise Tax Board would have no authority under state law to initiate a collection action before April 15. At least one California appellate case supports this interpretation as well. In Schatz v. Franchise Tax Board, 69 Cal.App.4th 595, 81 Cal.Rptr.2d 719, 724 (1999), the California Court of Appeal concluded that the date on which the Franchise Tax Board accepts a return is the “date when the State formally act[s] to finally fix the tax.” Thus, to the extent that the question here pertains to the substance of the tax claim and thus to California law, the Franchise Tax Board’s proposed interpretation is more persuasive. The Joyes filed for bankruptcy on March 7, 2001; the taxes became payable on April 15, 2001, during the pendency of the bankruptcy proceeding.
For these reasons, I would hold that, under 11 U.S.C. § 1305(a)(1), the Joyes’ 2000 taxes were post-petition. Accordingly, I would affirm the decision of the district court.

. Moreover, in Dixon, the agency conceded that the claim was prepetition. 218 B.R. at 151. That concession was key to the court’s holding that the taxes became payable at the close of the tax year. There is no such concession here.