**In re Franklin Eugene STARKEY and Bernette Bethel Starkey, both doing business as North Lake Estates; both formerly doing business as Front Range Distributors, Inc.; both formerly doing business as Tri-County Leasing and both formerly doing business as Double S Ranch, Debtors.**

Bankruptcy No. 81 B 03684 C.

United States District Court, D. Colorado.

Feb. 22, 1984.

Steven L. Zimmerman, Zimmerman & Schwartz, Denver, Colo. and Steven G. Frances, Fischer & Wilmarth, Fort Collins, Colo., for trustee, Gene Fischer.

John M. Franks, John M. Franks, P.C., Denver, Colo., for debtors Franklin Eugene Starkey and Bernette Bethel Starkey.

Asst. U.S. Atty., Jimmye S. Warren, Denver, Colo., for I.R.S.

## FINDINGS, CONCLUSIONS AND ORDER ON OBJECTION OF TRUSTEE TO CLAIMS FILED BY DEBTORS

PATRICIA ANN CLARK, Bankruptcy Judge.

The matter before the Court is the objection of the trustee, Gene Fischer, to claims filed by the debtors, Franklin Eugene Starkey and Bernette Bethel Starkey, on behalf of the United States of America and the State of Colorado for income tax liabilities for the years of 1978, 1979, 1980, and 1981. The trustee contends that the debtors' right to file claims on behalf of creditors extends only to the bar date for claim filing or alternatively until a reasonable time thereafter, a condition not met by these debtors. In contrast, the debtors assert that pursuant to 11 U.S.C. § 501(c) a debtor's right to file a claim on behalf of a non-filing creditor continues after the deadline for claim filing and that here the debtors' filing of claims was made within a reasonable time after the amounts owing to the United States and Colorado were known to the debtors. The debtors also contend that liability for the taxes in question did not arise until after the bankruptcy filing, as contemplated by 11 U.S.C. § 502(i), because the debtors were unaware of their tax liability until that time.

The facts are as follows. On July 27, 1981, the debtors filed a petition for relief under Chapter 7 of the Bankruptcy Code. The Order of Discharge was entered on February 1, 1982. The last date for filing claims was March 22, 1982. On January 4, 1983, the debtors filed claims for income taxes due to the United States and the State of Colorado for the years 1978, 1979, 1980, and 1981. The State of Colorado filed a proof of claim for 1978 taxes in the amount of $6,012.07 on January 27, 1983.

At the hearing held on January 17, 1984, George Foreman, a certified public accountant retained by the debtors in approximately 1979, testified to the circumstances surrounding the preparation and filing of the debtors' state and federal tax returns. Mr. Foreman testified that he prepared the debtors' federal and state income tax returns for the years 1978, 1979, 1980, and 1981.

In the course of his testimony, Mr. Foreman referred to copies of the completed tax returns and to records kept in his firm's ordinary course of business to substantiate the dates of his work for and his contacts with Mr. Starkey. The sequence of Mr. Foreman's work was as follows. Mr. Fore-

man's records show October 8, 1980 as the first date he performed work on the debtors' 1978 income tax returns. These state and federal income tax returns were completed and transmitted to Mr. Starkey on January 21, 1981. At that time Mr. Foreman advised Mr. Starkey that federal tax in the amount of $23,699 and state tax in the amount of $4,603 was due for 1978. Mr. Foreman also testified that he would not have completed the 1978 tax returns if he had not had all of the information necessary for those returns. Prior to his preparation of the 1978 tax returns, Mr. Foreman obtained copies of returns for years prior to 1978 to see if there were any carry-forward items for those years. The Court received no testimony from Mr. Foreman indicating that he recalculated or amended the debtors' income tax returns for any year prior to 1978. Mr. Foreman further testified that he had no knowledge of whether the 1978 returns were delayed in filing beyond January 21, 1981.

Mr. Foreman testified that he was retained to prepare the debtors' 1979 income tax returns on August 25, 1981. Mr. Foreman completed these returns on October 13, 1982. Mr. Foreman stated that the information necessary to compile the 1979 returns was given to him by Mr. Starkey, but his records did not indicate when he received this information. Mr. Foreman's records indicated that the first substantial time entry for preparation of the 1979 returns was in the first two weeks of October, 1982. Two other contacts between Mr. Foreman and Mr. Starkey occurred between August 25, 1981 and the beginning of October of 1982. Mr. Foreman stated that his records indicated contacts with Mr. Starkey on September 15, 1981 and November 13, 1981, but that there was no indication that these contacts involved the 1979 returns. From the beginning of his professional relationship with Mr. Starkey, Mr. Foreman performed services other than tax return preparation for Mr. Starkey. Mr. Foreman testified that he did not know why it took Mr. Starkey over a year from the initial contact to provide information for the preparation of the 1979 returns, but that he did not have any part in the delay.

Mr. Foreman knew that the debtors filed bankruptcy in July of 1981. However, he did not assist in the preparation of schedules nor was he asked for any information.

Mr. Foreman was retained to prepare the debtors' 1980 income tax returns on October 11, 1982. The 1980 returns were prepared concurrently with the 1979 returns and were also completed on October 13, 1982. Mr. Foreman testified that he communicated the completion of the 1979 and the 1980 returns to Mr. Starkey sometime between October 13, 1982, the date Mr. Foreman signed the returns, and November 29, 1982, the date that his records indicate Mr. Starkey's first payment on the final invoice.

November 15, 1982 was the first time entry for the preparation of the debtors' 1981 tax returns. Mr. Foreman testified that the majority of information for these returns was received between December 20, 1982 and January 11, 1983. On January 11, 1983 Mr. Foreman knew the amount of the debtors' state and federal income tax liability for 1981. Mr. Foreman's records indicated that he hand delivered the 1981 returns to Mr. Starkey on January 18, 1983.

Franklin Starkey was questioned concerning the filing of income tax returns for years subsequent to 1977. Mr. Starkey testified that a Mr. Halliburton prepared the debtors' 1977 income tax returns sometime in late 1979 or early 1980. After the 1977 return was completed, Mr. Starkey discovered that Mr. Halliburton had erred in preparing the 1977 returns by not carrying back the debtors' 1977 loss. It was Mr. Starkey's belief that Mr. Halliburton's error resulted in an increase in the debtors' tax liability for that year. Income tax returns for 1978, 1979, and 1980 would have been affected by the error in the 1977 return.

There was some conflict in Mr. Starkey's testimony as to why the debtors' delayed in the filing 1978 tax returns and failed to disclose the amount of their 1978 tax liability on their bankruptcy schedules filed in July of 1981. Mr. Starkey testified that

when he filed the bankruptcy schedules his attorney, James Wilson, told him to list the amount of his tax liability to the United States and Colorado as unknown. Mr. Starkey indicated that he was, at the time of the bankruptcy filing, still uncertain as to whether his 1977 return accurately reflected his tax liability for that year. There was some indication that Mr. Starkey attributed the delay in the filing of the 1978 returns and in the preparation of the 1979 return to his uncertainty concerning the 1977 returns. Mr. Starkey offered no further explanation for his delay in providing information to Mr. Foreman for the preparation of his 1979 income tax returns.

Upon cross-examination, Mr. Starkey was questioned about his testimony at the November 21, 1983 hearing where he indicated that he knew of his 1978 tax liability in April of 1979 when he was advised by his accountant, Mr. Halliburton, that he owed $60,000 to the federal government and $10,000 to the State of Colorado. Mr. Starkey testified that he did not remember receiving any letter from Mr. Halliburton's office estimating the amount of his 1978 tax liability.

Mr. Fischer, the trustee, testified to his communications with Mr. Starkey concerning the debtors' tax liability prior to the bankruptcy filing. Mr. Fischer related that he had been Mr. Starkey's counsel prior to the bankruptcy filing, but that he had not been retained to handle tax matters. Mr. Fischer testified that Mr. Starkey told Mr. Fischer that he thought he had a claim against Mr. Halliburton for mishandling the 1977 loss carry-forward and carry-back. In connection with this proposed action, Mr. Starkey had delivered to Mr. Fischer a copy of a letter from Mr. Halliburton's office to Mr. Starkey dated April 14, 1979 referring to the debtors' estimated 1978 tax liability as $60,000 to the United States and $10,000 to Colorado.

The questions presented are whether liability for the taxes owed by the debtors for 1978, 1979, 1980 and 1981 arose after the bankruptcy filing, as contemplated by 11 U.S.C. § 502(i), and whether 11 U.S.C. § 501(c) requires a debtor to file claims on behalf of creditors who do not file claims

by the bar date or whether debtors may file claims for a reasonable time after the deadline for claim filing.

▋ The debtors argue that the tax claims in question arose after the bankruptcy filing because the amount of liability owing by the debtors was not known to them until after that time. If these tax claims are Section 502(i) claims, they are entitled to special treatment under Section 501(d). The Internal Revenue Code specifically provides that taxes are due and payable without assessment or notice at the time that the tax returns are due. 26 U.S.C. § 6151(a). Since the taxes for 1978, 1979 and 1980 became due prior to the bankruptcy filing, they are prepetition obligations and are not entitled to treatment under Sections 501(d) or 502(i). *In re Penneta,* 19 B.R. 794 (Bkrtcy.D.Colo.1982); *In re Phillips,* 27 B.R. 94 (Bkrtcy.E.D.Va. 1983). The taxes for 1981 are not entitled to priority under Section 507(a), (b) because the taxable year ended *after* and not before the filing of the bankruptcy petition. Accordingly, they are also not entitled to treatment under Sections 501(d) or 502(i).

The trustee argues that Section 501(c) must be read in conjunction with the time limits set forth in Bankruptcy Rules 3002 and 3004. Read together, Rules 3002 and 3004 appear to limit the debtor's right to file on behalf of creditors to 90 days after the 341 meeting. Two divergent views exist as to whether 11 U.S.C. § 501(c) provides a debtor with the power to file claims on behalf of non-filing creditors after the deadline for claim filing has passed. In *In re Hatchett,* 31 B.R. 833 (Bkrtcy.E.D.Va. 1983), the court considered a Chapter 7 trustee's objection to a claim filed by the debtor on behalf of the Internal Revenue Service approximately six months after the last date for the filing of claims. The *Hatchett* case concerned an I.R.S. determination that the debtor was personally liable as a responsible officer for his corporation's debt for federal employee withholding taxes. The *Hatchett* debtor contended that he was unable to file a proof of claim on behalf of the I.R.S. until the subject

taxes were assessed against him and that former Bankruptcy Rule 302(e) permitted a debtor to file a proof of claim on behalf of a creditor after the expiration of the claim filing period.

In reaching its decision, the *Hatchett* court relied on a line of cases interpreting Section 57(n) of the Bankruptcy Act of 1898. The *Hatchett* court found that, although the Bankruptcy Code does not contain the specific time limits of 57(n), the former time limits remained effective because they were not superseded. By the *Hatchett* court's analysis, the provisions of 11 U.S.C. § 501(c) permit a debtor to file a proof of claim on behalf of a creditor only to the last date for the filing of claims. The court found that prior to the I.R.S. assessment, the *Hatchett* debtor's obligation to the I.R.S. was ascertainable as a contingent debt and that the debtor could have filed a timely claim on behalf of the I.R.S. listing his contingent liabilities. Additionally, the *Hatchett* court found that four of the debtor's creditors had reached a settlement with the debtors of their nondischargeable debts based upon the total amount to be paid to each of these creditors from funds in the estate. To have allowed the *Hatchett* debtor to file a late claim would have severely prejudiced these creditors.

An alternative interpretation of 11 U.S.C. § 501(c) is reflected in *In re Higgins*, 29 B.R. 196 (Bkrtcy.N.D.Iowa 1983). The *Higgins* case concerned Chapter 7 debtors who filed a claim on behalf of the I.R.S. for withholding and social security taxes as well as liability for Recapture of Investment Tax Credit. The *Higgins'* debtors filed on behalf of the I.R.S. 16 days after the claim filing deadline. There was no indication in *Higgins* that the debtors had failed to file any returns with the I.R.S. By allowing a debtor to file on behalf of a creditor who does not timely file, Section 501(c) necessarily allows a debtor to file a claim after the creditor's deadline for filing claims. The *Higgins* court referred to both the statutory language of Section 501(c) and the Congressional intent reflected in the legislative history. The court noted that neither Section 501(c) nor the applica-

ble bankruptcy rule set a time limit for the debtor to file claims. This contrasts with the six-month time limit set out in the old Bankruptcy Act. Because the Bankruptcy Code deleted the old statutory six-month limit, that time limit cannot be carried into the reformed Bankruptcy Code. Without a statutory time limit, the *Higgins* court interpreted Section 501(c) to allow a debtor a reasonable time to file claims on behalf of creditors who have not filed by the bar date. This result comports with the Congressional purpose underlying Section 501(c), which is to allow debtors the opportunity to treat nondischargeable, priority debts within the bankruptcy proceeding where creditors holding such debts fail to file claims.

■ The Court is persuaded that the *Higgins* court's analysis reflects the better view under Section 501(c). To hold otherwise would require debtors to speculate as to whether a creditor would file a claim by the bar date. If a debtor failed to file a claim on behalf of a state or federal taxing authority by the bar date, the debtor's obligation for any nondischargeable taxes would survive bankruptcy and would deprive the debtor of a fresh start. The Court is aware of the apparent discrepancy presented by Bankruptcy Rules 3002 and 3004 and Section 501(c) and its supporting legislative language. Where there is a potential conflict between the Bankruptcy Rules and the Code, the Code must prevail. Consistent with the *Higgins* decision, the Court finds that the debtors should be allowed a reasonable time after the deadline for filing claims to file on behalf of creditors.

The fact that a debtor will be given a reasonable time after the bar date to file claims does not diminish the overall objective of expediency and finality in Chapter 7 proceedings. A debtor who, upon discovering that a taxing authority has not filed a claim, files within the short time period reflected in the *Higgins* case is surely entitled to the protection of Section 501(c). Such a debtor would not prejudice the rights of other creditors and would not

unnecessarily delay the bankruptcy administration.

A different situation is presented in the Starkeys' case. The testimony indicated that the debtors were informed of their 1978 state and federal tax liability six months prior to the bankruptcy filing. While Mr. Starkey indicated that he doubted the accuracy of the debtors' 1977 returns, the Court received no indication that Mr. Starkey or anyone working on his behalf sought to remedy these purported mistakes or to file amendments to the 1977 returns. Mr. Foreman testified that he reviewed the 1977 returns in the preparation of later returns. He did not indicate that he found the 1977 returns to be improperly prepared or that Mr. Starkey advised him to redo the 1977 returns at the time the 1978 returns were prepared. The Court received no testimony explaining the debtors' delay in filing the 1978 returns. In the claim filed by the debtors in January of 1983, the 1978 tax obligation owed to the federal and state taxing authorities reflect the principal amounts calculated by Mr. Foreman and transmitted to the debtors in January of 1981. This was well before the filing of the bankruptcy petition. The Court finds that the debtors unreasonably delayed their filing of claims on behalf of the United States and Colorado for 1978 income tax liability.

As to the debtors' filed claims for 1979, 1980, and 1981 state and federal income tax liability, the debtors contend that they could not have filed before January of 1983 because until that time the amount of their tax liability was unknown to them. The Court rejects this argument. In the course of Mr. Foreman's and Mr. Starkey's testimony, the Court received no explanation of why the debtors delayed transmitting the information necessary for Mr. Foreman to prepare 1979 returns for over a year. Mr. Foreman testified that he was retained to prepare the 1979 return on August 25, 1981 and that he did not receive the necessary financial information until October of 1982. Once Mr. Foreman received the 1979 and the 1980 information, returns for both years were completed within a few days. The 1981 returns were similarly completed

in a short period of time in late December of 1982 and early January of 1983. Testimony did not indicate that Mr. Foreman contributed to any delay in the preparation or filing of these returns.

In this case the debtors are solely responsible for the delay in the preparation of the 1979, 1980, and 1981 returns. Section 501(c) is not a shield against the debtors' own dilatory conduct in preparing tax returns. Rather, Section 501(c) charges debtors with the responsibility to act with reasonable diligence to protect themselves against the unreasonable delay of others. This Court should not allow debtors the protection of the Bankruptcy Code without imposing upon them the duty to act promptly to facilitate the bankruptcy administration. Debtors cannot delay the preparation of their income tax returns after the bankruptcy filing with the expectation that the bankruptcy process will stop until they choose to proceed. The Court finds that the debtors' delay in the preparation of 1979, 1980, and 1981 income tax returns and the resulting delay in the filing of claims on behalf of the United States and Colorado was unreasonable.

In this case it does not appear that the creditors would be prejudiced to the extent that they were in the *Higgins* case if the Starkeys were allowed to file these late claims. While prejudice to other creditors was one of the grounds relied upon by the *Higgins* court, such prejudice is not the only factor to be considered in deciding whether debtors acted reasonably in filing claims on behalf of creditors. A court must consider the overall conduct of the debtors, any reasons for the delay, and the pervasive requirement that those who seek the protections of the Bankruptcy Code act with diligence to facilitate the administration of their estates. Here, the debtors knew six months prior to filing that they owed income taxes to the state and federal governments. By the time of the bar date, approximately eight months after the bankruptcy filing and 14 months after Mr. Foreman prepared the 1978 returns, the debtors had sufficient time to validate the 1978

return and to prepare the 1979, 1980, and 1981 returns. At the very least, the debtors should have filed a claim on behalf of the United States and Colorado for the amounts calculated by Mr. Foreman to be due for 1978. Additionally, they could have filed a claim for an "unknown" amount for the subsequent years' taxes. Such a claim would have protected the debtors' right to include the tax liabilities within the bankruptcy proceeding and put the trustee and creditors on notice that they intended to make a claim against the estate for such taxes. The debtors could have amended their claim at a later time, assuming that they acted with diligence, to reflect the amounts actually due. They did none of this. As stated earlier, these debtors unreasonably delayed the preparation and filing of their tax returns. Creditors should not be required to await the litigation and determination of the amounts owing to the federal and state taxing authorities before any distribution can be made. The debtors' claims for taxes for 1978, 1979, 1980 and 1981 should be disallowed.

ORDERED that the debtors' delay in filing Claims Numbered 21 and 22 on behalf of the United States and Colorado for income taxes payable for 1978, 1979, 1980, and 1981, was unreasonable and these claims are disallowed. Claim Number 23 filed by the State of Colorado is late and is also disallowed.

FURTHER ORDERED that the parties shall have 10 days from the date this Order becomes final to file a written request for the withdrawal of all exhibits received · in evidence, after which time the exhibits will be destroyed by the Clerk without further order of the Court.