**In re Gary Wayne MATRAVERS and Dianne Lea Matravers, Debtors.**

**Gary Wayne MATRAVERS and Dianne Lea Matravers, Plaintiffs,**

**v.**

**UNITED STATES of America, through its agency the UNITED STATES INTERNAL REVENUE SERVICE (IRS), Defendant.**

**Bankruptcy No. 84A–03285.
Adv. P. No. 88PA–0967.**

United States Bankruptcy Court,
D. Utah, C.D.

Jan. 15, 1993.

---

Gary G. Kuhlman, John N. Brems, Jardine, Linebaugh, Brown & Dunn, Salt Lake City, UT, for debtors.

Kirk C. Lusty, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, DC, for U.S. Through U.S. I.R.S.

## MEMORANDUM OPINION AND DECISION

JOHN H. ALLEN, Bankruptcy Judge.

A hearing on a Motion for Summary Judgment filed by Gary Wayne and Dianne Lea Matravers (debtors) was held. Gary G. Kuhlmann and John N. Brems appeared for the debtors; Kirk C. Lusty appeared for the United States. The matter was taken under advisement. The Court now issues the following decision.

## FACTS

On December 3, 1984, the debtors filed a chapter 13 bankruptcy petition. On February 22, 1985, the United States Internal Revenue Service ("IRS") filed a proof of claim in the amount of $13,441.88 for income tax liability incurred between January 1, 1983, and December 31, 1983 ("1983 Personal Liability"). On July 19, 1985, this Court confirmed a chapter 13 Plan which listed, but provided no payment for, the 1983 Personal Liability.

After filing the petition, specifically between December 3, 1984, and late 1988, the IRS attempted to collect the following taxes from the debtors: First, approximately $27,000 owed in personal income taxes incurred in 1984 ("1984 Personal Liability"); second, $8,352.07 owed in corporate income taxes and federal unemployment taxes by a professional corporation solely owned by the debtors and incurred in 1982 and 1983 ("Corporate Liabilities"); third, personal income tax liabilities of $2,926.76 for 1985 and an unspecified amount for 1986.

The IRS' diligent collection efforts were successful. By attaching tax refunds, levying on an IRA and demanding payments directly from the debtors, the IRS obtained $14,760.12.

On January 20, 1989, the debtors commenced this adversary action requesting a declaratory judgement that the 1984 Personal Liability and the Corporate Liabilities were discharged. In addition, they sought return of the sums paid to the IRS, attorneys' fees and costs, and punitive damages.

Subsequently, on June 13, 1989, the debtors moved for summary judgement.

## OVERVIEW

In order to resolve the issues in this case, the Court will evaluate the status of the various tax claims against the debtors, de-

termine the status of the funds obtained and ascertain whether the IRS has violated the automatic stay.

## I. BANKRUPTCY STATUS OF TAX CLAIMS

### A. 1983 Personal Liability

■ The debtors and the IRS agree with the proposition that the pre-petition claims of the IRS will be discharged upon completion of the plan pursuant to 11 U.S.C. § 1328. The chapter 13 plan provided that the IRS would receive no payments on the pre-petition 1983 Personal Liability claim. A confirmed plan denying the IRS payment is binding. *See Ledlin v. United States (In re Tomlan)*, 102 B.R. 790 (E.D.Wash. 1989), *aff'd* 907 F.2d 114 (9th Cir.1990). Thus the 1983 Personal Liability will be discharged pursuant to § 1328(a) when the plan is fully paid.

### B. 1984 Personal Liability

The status of the 1984 Personal Liability is far more complicated. The debtors maintain that the portion of the 1984 Personal Liability accrued before December 3, 1984, is a pre-petition debt. As such, they argue, the pre-December 3, 1984, portion is discharged by the IRS' failure to file a claim under both 11 U.S.C. § 502 and Bankruptcy Rule 3002(a). The IRS responds that the 1984 Personal Liability is post-petition debt not incurred by the debtors until the 1984 tax year closed on December 31, 1984.

■ The two positions advanced mirror the two major theories used to determine the pre or post-petition status of a tax. One line of cases fixes a tax claim based on when the income is earned on which the tax is applied. Under this theory, the status of a tax in bankruptcy is predicated upon the date the tax is incurred, not when assessed. *See In re Overly–Hautz Co.*, 57 B.R. 932, 937 (Bankr.N.D.Ohio 1986); *In re Davidson Lumber Co.*, 47 B.R. 597, 598–99 (Bankr.S.D.Fla.1985); *In re Scrap Disposal, Inc.*, 24 B.R. 178, 180 (Bankr.S.D.Calif.1982).

In contrast, another line of cases hold that the key triggering device is when a tax is due. *See United States v. Ripley (In re Ripley)*, 926 F.2d 440, 448 (5th Cir. 1991); *In re Gonzalez*, 112 B.R. 10, 12 (Bankr.E.D.Tex.1989); *In re Starkey*, 49 B.R. 984, 987 (D.Colo.1984).

This Court believes that the language of the Bankruptcy Code mandates the second rule; the key event is when a tax is due. Section 1305 provides that a government unit may file a post-petition claim for taxes that "become payable ... while the case is pending." 11 U.S.C. § 1305(a)(1). Thus, a tax claim that becomes payable after the filing of a petition is a post-petition claim. As the Fifth Circuit determined in *Ripley*, taxes that are payable are "those that *must be paid now.*" 926 F.2d at 444 (emphasis in original). The *Ripley* Court further summarized that "our view [is] that taxes "become payable" when the tax return is due." *Id.* at 446.

■ The debtors' 1984 Personal Liability became payable when their 1984 tax return was due, on April 15, 1985. Therefore, the 1984 Personal Liability is a post-petition liability.

Since the IRS has failed to file a post-petition claim, under § 1305(a)(1), on the 1984 Personal Liability the IRS must wait until the case is closed to collect the sums due. 5 COLLIER ON BANKRUPTCY ¶ 1305.01(2) (15th ed. 1992) ("the holder of ... a post-petition claim may refrain from filing proof of the post-petition claim, thereby waiving the right to distribution under the chapter 13 plan, in hopes of recovering against the debtor after the closing of the case.").

### C. Corporate Liabilities

The IRS maintains that the Corporate Liabilities are unaffected by the debtors' chapter 13 filing because the liabilities are owed by a separate legal entity, a professional corporation. This position is correct in respect to the debts owed by the professional corporation. But the issue is the debtors' liability for the professional corporation's tax debts. Since the IRS neglected to file a claim for the debtors' liability for the Corporate Liabilities, those debts, with respect to the debtors, are not valid under

this chapter 13 case. 11 U.S.C. § 502 and Bankruptcy Rule 3002(a).

## II. STATUS OF FUNDS OBTAINED BY THE INTERNAL REVENUE SERVICE

■ In light of the above determinations, the next issue is the status of the property obtained by the IRS in an effort to satisfy several of the debtors' tax liabilities. Section 549 provides that the trustee may avoid an un-authorized post-petition transfer of property of the estate. 11 U.S.C. § 549. A chapter 13 debtor has standing to pursue an action under § 549. *Johnson v. Investment Leasing, Inc. (In re Johnson)*, 51 B.R. 220, 222 (D.Colo. 1985).

■ The property of the estate, for a chapter 7 and chapter 11 debtor, includes all legal and equitable interests of the debtor before the filing of a petition. 11 U.S.C. § 541(a)(1). Post-petition earnings of the debtor are specifically excluded from the chapter 7 estate. 11 U.S.C. § 541(a)(6). The chapter 13 estate consists of property that would be included in a bankruptcy estate under chapter 7 but also adds property acquired after commencement and before closing of the case and all earnings of the debtor. 11 U.S.C. § 1306. The IRS received transfers of property and earnings of the debtors, clearly within the broad chapter 13 definition of the "property of the estate." Accordingly, such property must be returned to the debtors, subject to the following condition.

Section 549(d)(1) requires that any turnover action be filed within two years of a post-petition transfer. Thus, any transfer to the IRS after January 20, 1987 (two years before the filing of the adversary action) not consistent with the terms of the debtors' chapter 13 plan for payments of pre-petition liabilities, must be set aside. This Court orders all such property to be returned to the debtors forthwith. However, because the statute of limitations had run, the IRS may retain any property acquired from the debtors before January 20, 1987.

## III. VIOLATIONS OF THE AUTOMATIC STAY

Section 362 provides an automatic stay of proceedings against a debtor immediately following the filing of a bankruptcy petition. 11 U.S.C. § 362. The importance of the automatic stay in bankruptcy is made clear in the legislative history of section 362:

> The automatic stay is the most fundamental debtor protection provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.

H.R.Rep. No. 595, 95th Cong., 1st Sess. 340–42 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 54–55 (1978); reprinted in 1978 U.S.Code Cong. & Admin.News 5787 at 5840, 6296–97.

The penalty for violation of the automatic stay is set forth in § 362(h): "An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. 362(h).

■ The IRS' actions to collect the 1984 Personal Liability and the Corporate Liabilities clearly violated the automatic stay. The crucial inquiry is whether the IRS, as a government entity, is subject to § 362(h) damages. The required pre-condition to an award of monetary damages against the United States is an expressed waiver of sovereign immunity. *United States v. Mitchell*, 463 U.S. 206, 212, 103 S.Ct. 2961, 2965, 77 L.Ed.2d 580 (1983). As the 10th Circuit has noted, "a provision authorizing sanctions does not automatically waive sovereign immunity, and thus does not apply, without more, to fee awards against the government." *Graham v. United States (In re Graham)*, 981 F.2d 1135, 1138 (10th Cir.1992).

Section 106(a) states that "a governmental unit is deemed to have waived sovereign immunity with respect to any claim against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which such governmental unit's claim arose." 11 U.S.C. § 106(a). As the Tenth Circuit has summarized, § 106(a) has three requirements: "The government must have filed a claim against the estate; the claim against the government must be property of the estate; and the claim against the government must arise from the same transaction or occurrence as the government's claim." *Graham* at 1141.

The IRS did file a claim against the debtors' bankruptcy estate, namely for the 1983 Personal Liabilities. The debtors' claims against the IRS in this adversary action comport with the broad definition of property of the estate in a chapter 13. Both the IRS' tax claims against the debtors and the debtors' claims in this adversary action are sufficiently related and arise from substantially the same transaction, particularly the debtors' failure to pay taxes during the early 1980s. The terms of Section 106(a) are satisfied.

This approach is consistent with *Graham*. There, the Tenth Circuit found that the claims at issue were not sufficiently related to meet the "same transaction or occurrence" requirement of § 106(a). *Id.* The IRS had filed a tax claim against the Grahams after a chapter 7 filing. The Grahams filed an adversary action to determine tax liabilities. The Court found that the IRS' delays and counsel misbehavior in the adversary action were outrageous, but the Court held that the IRS' conduct in the litigation and the debtor's tax liabilities were distinct events and failed the "same transaction or occurrence" requirement. *Id.*

The Tenth Circuit did cite with approval two cases that had found situations where a § 106(a) waiver was appropriate, *In re Lile* and *In re Price*. *Id. In re Lile*, 103 B.R. 830, 835 (Bankr.S.D.Tex.1989), established that a "proof of claim and claim against the IRS for improper levy on personal property arise out of the same operative facts, namely failure to pay taxes." *Graham* at 1141. Likewise, *In re Price*, 103 B.R. 989, 995 (Bankr.N.D.Ill.1989), found that a sufficiently close nexus between the IRS' claims and a debtors' claim existed when the IRS had filed a proof of claim for the 1988 tax year, a claim which was provided for in the debtors' chapter 13 plan, and then the IRS violated the automatic stay by attempting to collect on its 1988 tax claim. *Id.* at 995. These cases carve out an important exception to the general reluctance to grant a § 106(a) sovereign immunity waiver: A sufficiently close nexus exists where the IRS' claim and the debtor's claim against the IRS arise directly from the same taxes.

Pursuant to the above analysis, this Court could have imposed punitive damages on the IRS. However, the Court is content, under the circumstances at hand, to require return of the seized property and order payment by the IRS of the debtors' attorneys' fees and court costs incurred in pursuing this action.

## CONCLUSION

Debtors, upon completion of their chapter 13 plan, will be discharged of all pre-petition tax claims including the 1983 Personal Liability. The IRS must return to the debtors all property seized after January 20, 1987, to pay pre-petition debts and reimburse the attorneys' fees and court costs incurred by the debtors in pursuing this action.

IT IS THEREFORE ORDERED that the debtors' Motion for Summary Judgment is granted to the extent specified in this decision.