In re Marshal J. DIXON and Joanie M. Dixon, Debtor.

Marshal J. DIXON and Joanie M. Dixon, Plaintiffs,

v.

UNITED STATES of America ex rel. INTERNAL REVENUE SERVICE, Defendant.

Bankruptcy No. BK–93–11972–LN.
Adversary No. ADV–97–1051–LN.

United States Bankruptcy Court, W.D. Oklahoma.

July 22, 1997.

Joseph W. Farber, Oklahoma City, OK, for Plaintiffs.

William F. Castor, Special Assistant United States Attorney, Oklahoma City, OK, for Defendant.

### ORDER ON MOTION TO RECONSIDER AND TO VACATE JUDGMENT

PAUL B. LINDSEY, Bankruptcy Judge.

### BACKGROUND

Debtors commenced their bankruptcy case on April 9, 1993 by filing their voluntary petition under Chapter 13 of the Bankruptcy Code.[1] On April 15, 1993, they filed their 1992 federal income tax return, which showed an unpaid balance of $1,236, the amount scheduled by debtors as a debt to the Internal Revenue Service ("IRS"). Debtors' Chapter 13 plan, which provided for the $1,236 debt to be paid to IRS as an unsecured priority claim, was confirmed by this court on July 12, 1993. No proof of claim was filed with regard to this debt, either by or on behalf of IRS. Thus, although debtors provided for the tax liability and made all their plan payments, IRS received no payment with regard to this debt. On April 14, 1996, after having made all their plan payments, debtors were granted a discharge under § 1328(a). Thereafter, IRS collected $1,275 through a wage levy against debtors, and $716.06 by setoff of a 1996 overpayment, both amounts being credited to debtors' 1992 income tax liability and interest and penalty attributable thereto. While these collection procedures were ongoing, debtors commenced this adversary proceeding to determine whether debtors' 1992 income tax liability had been discharged.

On June 10, 1997, this court filed its Order on Cross–Motions for Summary Judgment in the adversary proceeding. *In re Dixon,* 209 B.R. 535 (Bankr.W.D.Okla.1997). In that order, this court held that the debtors' 1992 income tax liability constituted a prepetition debt which arose at the end of the 1992 calendar year, even though a tax return for that year was not yet due on the petition date. *See also In re Graybeal,* No. BK–93–

---

1. References herein to statutory provisions by section number only will be to provisions of the Bankruptcy Code, 11 U.S.C. § 101 et seq., unless the context requires otherwise.

14250–LN, order entered December 19, 1993. This court also held, following its earlier decision in *In re Sorge*, 149 B.R. 197 (Bankr. W.D.Okla.1993), that even though the debt was entitled to priority under § 507, and was provided for in a confirmed Chapter 13 plan which included amounts intended to pay such debt, if no payment is made on the debt due to the failure of the taxing authority, or anyone on its behalf, to file a proof of claim, such debt was discharged after debtors completed making all payments under the plan.

This court therefore granted summary judgment to debtors and ordered IRS to turn over to debtors all amounts collected by it after the entry of debtors' discharge, with interest.

Thereafter, IRS timely filed, pursuant to Rule 9023, Fed. R. Bankr.P., its Motion to Reconsider Order and Vacate Judgment, with supporting brief. In its brief, IRS contends that this court has misapprehended the IRS position and the related law. While IRS agrees with this court's conclusion that debtors' 1992 tax liability "arose" on December 31, 1992, and is therefore prepetition, it contends that the issue is not when the liability arose, but when it became "due and payable" pursuant to § 1305.[2] IRS asserts that: "Such a claim encompasses a liability which 'arose' prior to the commencement of the case, i.e., a prepetition liability, where the liability became 'due and payable' during the pendency [sic] of the case." Under the IRS reading of § 1305(a)(1), "a tax claim that becomes payable after the filing of the bankruptcy petition is a 1305 claim, regardless of when the claim arose."[3]

If the IRS position is accepted by this court, its June 1997 order would be effectively reversed. Debtors' 1992 tax liability would not have been discharged upon the completion of debtors' payments under their Chapter 13 plan. While IRS could have filed a proof of claim as to that tax liability under § 1305(a)(1), it could not have been compelled to do so, and no proof of claim could have been filed on its behalf. After the completion of payments under the plan, IRS would have been free to commence collection efforts as to that tax liability, and to retain any funds received to apply against the liability and any interest and penalty attributable to it.

## DISCUSSION AND DECISION

For its position, IRS relies upon *In re Matravers*, 149 B.R. 204 (Bankr.D.Utah 1993), which in turn relies upon *United States v. Ripley (In re Ripley)*, 926 F.2d 440 (5th Cir.1991); *In re Gonzalez*, 112 B.R. 10 (Bankr.E.D.Tex.1989); and *In re Starkey*, 49 B.R. 984 (Bankr.D.Colo.1984). A brief review of the fact situations and holdings in those cases will be helpful in determining the issues before this court at this time.

In *Matravers*, debtors filed their Chapter 13 petition on December 3, 1984, and later contended that the portion of their 1984 income tax liability that accrued before the filing date was discharged due to the failure of IRS to file a claim. IRS responded that all of the 1984 liability was post-petition debt not incurred by debtors until the 1984 tax year closed on December 31, 1984. The court cites cases said to hold that a tax claim arises when the income is earned on which the tax is applied.[4] The court then cites *Ripley*, *Gonzalez*, and *Starkey*, as cases representing authority for the proposition that "the key triggering device is when a tax is due." The court recites the language of § 1305(a)(1) and concludes that taxes become payable for purposes of that provision when the tax return is due. The court then holds that debtors' 1984 income taxes became payable on April 15, 1985. The tax liability was therefore a post-petition liability, and since

---

**2.** Section 1305(a)(1) does not contain the words "due and payable," but only the word "payable." It is as follows: (a) A proof of claim may be filed by any entity that holds a claim against the debtor—

(A) for taxes that become payable to a governmental unit while the case is pending. . . .

**3.** The court addresses the contentions of IRS without the benefit of any responsive pleading or brief, debtors having not responded to the motion.

**4.** *In re Overly–Hautz Co.*, 57 B.R. 932 (Bankr. N.D.Ohio 1986); *In re Davidson Lumber Co.*, 47 B.R. 597 (Bankr.S.D.Fla.1985); *In re Scrap Disposal, Inc.*, 24 B.R. 178 (Bankr.S.D.Cal.1982).

IRS did not file a proof of claim under § 1305(a)(1), that liability was not discharged. *Matravers,* 149 B.R. at 206.

In *Starkey,* debtors filed their petition in bankruptcy in mid–1981. Before the court was the objection of the trustee to proofs of claim filed by debtors after the bar date on behalf of the taxing authorities for tax liabilities for the years 1978, 1979, 1980 and 1981. Debtors contended, *inter alia,* that the amount of tax liability owed by debtors for those years was not known to them until after they filed their bankruptcy petition, and that therefore the liability for each such year arose post-petition and the claims should be treated under §§ 502(i) and 501(d). Noting that 26 U.S.C. § 6151(a) specifically provides that taxes are due and payable without assessment or notice at the time the tax returns are due, the court summarily determined, without discussion, that the tax liability for the years 1978, 1979 and 1980 became due prior to the bankruptcy filing, were pre-petition claims, and were not entitled to treatment under §§ 502(i) and 501(d). Also without discussion, the court determined that taxes for 1981 were not entitled to priority under § 507(a), (b) "because the taxable year ended after and not before the filing of the bankruptcy petition," and that therefore they were also not entitled to treatment under §§ 502(i) and 501(d). *Starkey,* 49 B.R. at 987.

In *Gonzalez,* debtor's qualified retirement plan was terminated in January 1986 and debtor filed his petition in bankruptcy in late February 1986. Debtor took the position that the event which triggered the tax liability was the termination of the qualified plan within the calendar year 1986, and that since that event took place prior to the filing of his bankruptcy petition, the tax should be considered a pre-petition liability and be paid as a priority claim out of funds held by the trustee before remaining funds were distributed to unsecured creditors. IRS took the position simply that there was no pre-petition tax liability. The court noted that the debtor, pursuant to 26 U.S.C. § 1398(d)(2), could have terminated his 1986 tax year the day before he filed his bankruptcy petition, there-

by creating a pre-petition liability for the short-year period from January 1 to February 22, 1986, but that he did not do so. The court then held that the entire tax liability for calendar year 1986 was a post-petition liability, stating: "The tax liability does not arise until the close of the calendar year and is not due until the time for filing the return." The court then quoted the language set out above from *Starkey,* to the same effect. *Gonzalez,* 112 B.R. at 12.

In *Ripley,* debtor was self-employed, and therefore was required to estimate self-employment tax liability and to make quarterly instalment payments. Although required, no such payments were made by debtors in 1987, and they filed a Chapter 13 petition in November of that year. They scheduled a priority obligation to IRS in the amount of $21,000, which was to be paid in full under the proposed Chapter 13 plan. IRS did not file a proof of claim prior to the bar date, and debtors' plan was confirmed. In 1988, debtors filed their tax return, which showed that they owed some $20,000 in taxes and penalties. IRS then filed a proof of claim, under § 1305, asserting entitlement to income and self-employment taxes for 1987. Debtors objected to the proof of claim, arguing that the unpaid instalment payments due following each of the first three quarters of 1987 were "payable" on the dates on which the instalment payments should have been made, were therefore pre-petition claims that could not be asserted under § 1305, and that a claim for those pre-petition claims under § 501 and Rule 3002, Fed.R.Bankr.P. was untimely.

The court in *Ripley* specifically addresses the issue of when taxes "become payable" for purposes of § 1305. Conceding that an argument may be made that the term means "able to be" or "capable of being" paid, the court nevertheless concludes that "taxes that have 'become payable' are those that *must be paid* now," and that "taxes 'become payable' when the tax return is due." The court notes that the debtors do not disagree with that construction of the term, and that both the bankruptcy and district courts equated "payable" with "due and owing."[5] *See also*

---

**5.** *Ripley,* 926 F.2d at 444 [emphasis in original], 446.

*In re Pennetta,* 19 B.R. 794, 796 (Bankr. D.Colo.1982).

The court discusses definitions of the term "payable" in Black's Law Dictionary, the use of the term in the law of commercial paper, and the provisions of 26 U.S.C. § 6151. *Ripley* therefore stands for the proposition that even though quarterly estimated payments are required to be made, the tax liability for self-employment taxes does not arise until the tax return for the taxable year is required to be filed. As a result, in that case, the liability was a post-petition liability, and the IRS claim under § 1305(a)(1) was proper.

*Starkey* and *Gonzalez* were both cases under Chapter 7. Thus, § 1305 was not involved in either of those cases, since that provision has applicability only in cases under Chapter 13. Further, it is not at all clear that either of those courts would have decided the § 1305 issue as it was decided by the *Ripley* and *Matravers* courts, had that issue been presented to them. As the above quotations from those cases make clear, each court was of the opinion that the tax liability arose at the close of the taxable year. Although the court in *Gonzalez* also stated that the tax "is not due until the time for filing the return," citing 26 U.S.C. § 6151, the meaning of the term "payable" in § 1305(a)(1) was not before the court and was therefore not addressed by it. There is no indication that the court believed, or would have decided, that the terms "due" and "payable" were synonymous. In view of the foregoing, the citation of *Starkey* and *Gonzalez* by the *Matravers* court as holding "that the key triggering device is when a tax is due" may well have been inappropriate.

The courts in *Matravers* and *Ripley* clearly hold that tax liability for a year during which a bankruptcy petition is filed is a post-petition liability, and that the taxing authority may, but is not required to, file a proof of claim under § 1305(a)(1) in order to obtain payment of the liability out of payments made under the Chapter 13 plan. The determination of whether the liability is prepetition or postpetition depends, according to those courts, upon whether the taxes "become payable while the case is pending." This is a curious determination, since that language does not govern when a claim arises, but only whether or not a proof of claim may be filed with regard to such a claim.

As is noted above, this court has held, and adheres to the holding, that the liability in such a case arises at the end of the taxable year, and is therefore a prepetition debt when the taxable year has ended prior to the filing of the bankruptcy petition. *See Graybeal, supra.* In this case, IRS asserts that it agrees with this court's characterization of debtors' tax liability for 1992 as prepetition, but argues that § 1305(a)(1) is nevertheless applicable because the tax did not "become payable" until April 15, 1993. In support of this position, IRS cites *Matravers* for the proposition that "a tax claim that becomes payable after the filing of the bankruptcy petition is a 1305 claim, regardless of when the claim arose." This court is of the view that *Matravers* does not stand for that proposition. Instead, *Matravers* stands for the proposition that to determine the prepetition or postpetition status of a tax claim, the key event is when the tax is due, rather than when the income on which the tax is based was earned, and that a tax claim which becomes payable after the filing of a bankruptcy petition is a postpetition claim. Thus, *Matravers,* like all three *Ripley* courts, seems to make no distinction between the terms "due" and "payable", nor between when the claim arose and when it became payable, and would hold that it arose on the date when it became due or payable. In the circumstances, it seems to this court that IRS can not rely upon *Matravers* and *Ripley* and still agree with this court's determination that the tax liability in this case arose prepetition.

The claims of the taxing authorities in both *Matravers* and *Ripley* would have been found to be postpetition claims even if those courts had determined that the taxes became payable at the close of the taxable year, rather than on the date a return was required to be filed. This is true because in each of those cases, the bankruptcy petition was filed by the debtors before the end of the taxable year for which the liability was incurred.

In the case before this court, the bankruptcy petition was filed on April 9 of the year *following* the year for which the liability was incurred, six days before the date on which a return was required to be filed for the preceding year. Contrary to this court's conclusion, *Matravers* and *Ripley* would find the tax liability in this case to be postpetition, since the tax return was not required to be filed until after the petition date.

■ This court does not believe that whether a claim is prepetition or postpetition should be determined by or with reference to the language of § 1305. A claim should be determined to be prepetition or postpetition based upon when it arises or comes into being. The broad definition of the term "claim" in § 101(5) provides no basis whatever for making that determination based upon any other criterion.

The title of § 1305, enacted with the text as a part of Title 11, is "Filing and allowance of postpetition claims." Thus, it would seem clear that the provision was not intended to have applicability to prepetition claims, such as the claim of IRS in question here. IRS would have the court, by judicial fiat, expand the title and reach of the section by adding "or prepetition claims which become due and payable postpetition." This court is of the view that such an expansion is neither necessary nor appropriate, and that it would constitute a clearly improper exercise of judicial authority.

The extent of liability for personal income taxes is, subject to rare exceptions, susceptible of ascertainment immediately upon the close of the calendar year for which the liability is incurred. Similarly, although the taxpayer is not required to file a return of his or her income until the following April 15, he or she *may* file such a return and pay any liability or request a refund of any overpayment at any time after the close of the taxable year. With all due respect to the court in *Ripley*, this court sees no reason why such taxes should not be found to "become payable" when they are able to be or capable of being paid, rather than only when they must be paid. This result not only comports with reality, but prevents the difficulties inherent in choosing a definition which creates a "gap" period where one is neither necessary nor appropriate.

■ This court therefore holds that the liability of debtors in this case became payable, for purposes of § 1305(a)(1) immediately upon the close of the calendar year 1992, before the commencement of this case. Thus, the prepetition tax liability of debtors for that year could not have been the subject of a proof of claim by IRS under § 1305(a)(1), and the failure of IRS to file a proof of claim under § 501(a), or to have one filed on its behalf under § 501(b) or (c) resulted in the personal liability of debtors for those taxes being discharged upon completion of payments under their confirmed Chapter 13 plan.

IRS complains that this court's decision in this matter "truly leads to an anomalous result with respect to bankruptcies filed between January 2 and April 15 of the year subsequent to the related liability." Because it has a prepetition priority claim which has accrued but which is not yet due, IRS asserts that it would be required to file a proof of claim so as to not have the liabilities discharged, but since the related return is not yet due, and the liability not yet enforceable, it would be required to file an estimated claim for a liability not yet due and payable. IRS states that it is faced "with the following dilemma: (1) it cannot properly demand that a debtor's plan pay tax which is not yet 'due and payable' by listing the liability as a prioirty [sic] claim in a Proof of Claim; (2) it cannot file a Code § 1305 claim for such a tax where it 'arose' prior the [sic] filing of the petition; and (3) it cannot collect the tax after the completion of the plan due to the tax having been discharged by virtue of the plan." IRS asserts that § 1305 was enacted to resolve this dilemma.

■ Section 1305 was enacted in order to permit, but not compel, taxing authorities and certain consumer creditors whose claims arise during the pendency of the Chapter 13 case to participate in the case, rather than waiting until the completion of the case to seek payment. At least in the case of priority tax claims, "[v]oluntary participation in a plan by the holder of the claim may be

beneficial to all concerned" because "[p]artic-ipation will provide a struggling debtor with more time within which to satisfy a post-petition tax claim than would otherwise be permitted under applicable nonbankruptcy laws...." *In re Gyulafia*, 65 B.R. 913, 917 (Bankr.D.Kan.1986). It appears clear that the Congress did not enact § 1305 to resolve a dilemma for IRS or any other taxing authority. In fact, in this court's view, no such dilemma exists.

█ Under Rule 2003(a), Fed.R.Bankr.P., the meeting of creditors required by § 341(a) must be called to be held no fewer than 20 and no more than 50 days after the filing of the petition. Under Rule 3002(c), a proof of claim is timely if filed not later than 90 days after the first date set for the meeting of creditors. Under an exception provided by Rule 3002(c)(1), a proof of claim filed by a governmental unit is timely filed if filed not later than 180 days after the date of the filing of the petition, which time may be extended by the court on motion filed within the original period. Thus, IRS has 180 days from the petition date within which to file a proof of claim. Such a proof of claim, therefore, as to any petition filed on January 2, may be timely filed as late as July 1 of that year, which is 77 days after April 15.

█ Further, contrary to the IRS assertions of considerable hardship, it is common practice for IRS to file estimated proofs of claim. In cases where a debtor has not filed returns, for any prior year, estimated proofs of claim are frequently filed. This may be done in order to protect IRS from the confirmation of a plan not providing for the tax claims or from the subsequent discharge of the tax obligations upon completion of a confirmed plan. Such estimates are employed by the Chapter 13 Trustee, and by the court, in the determination of whether the proposed Chapter 13 plan is feasible. If such an estimated proof of claim is not amended, it will be required to be paid as filed by the Trustee under a confirmed Chapter 13 plan.

█ In this district, the confirmation process is allowed to proceed prior to the claims bar date. As a result, it is not at all unusual for a plan to be confirmed before all proofs of claim have been, or are required to be filed.

Claims timely filed subsequent to plan confirmation will be allowed unless objected to, and their effect upon the confirmed plan will be evaluated by the Chapter 13 Trustee. If a claim was not contemplated by the plan, or if it is substantially in excess of the amount contemplated, the Trustee may determine that the plan as confirmed is no longer feasible, and may move the court either to modify the plan to make it feasible or to dismiss the case. In short, a timely filed proof of claim can not and will not be disallowed or denied payment simply because a plan was confirmed before the proof of claim was timely filed.

█ Finally, as a matter of policy in this district, a Chapter 13 plan will not be confirmed over the objection of a taxing authority based upon the failure of a debtor to file a required tax return, whether or not an estimated proof of claim has been filed.

The foregoing indicates that IRS has any number of protections available to it, all of which it is fully aware of and all of which it has consistently taken advantage of over the years. At the current rate of filings in this district, approximately 700 Chapter 13 cases will be filed between December 31 and the following April 15. Many, if not most of those cases will involve debtors who have not filed federal and/or state income tax returns for one, or more often, for several years. So far as this court is aware, IRS has been able to deal with these situations over the years without undue discomfort. This court is confident that it will be able to deal with similar situations as they arise in the future, also without undue discomfort.

In view of the foregoing, this court grants the IRS motion to reconsider order and vacate judgment. Upon reconsideration of its earlier order, the court reaffirms the findings and conclusions contained in that order, supplementing those conclusions as set forth herein. Finding no basis upon which the judgment entered pursuant to that order should be vacated, this court denies the IRS request for that relief, and reaffirms that judgment.